**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
DIANA BABAYEVA,                                     :

                                                               :         Civil Case No.
                             Plaintiff,        :
                                                                :
                      v.                            :       **COMPLAINT**
                                                                :
HALSTEAD MANAGEMENT COMPANY, LLC, :
d/b/a HALSTEAD, PENMARK MANAGEMENT  :
LLC, PENMARK REALTY CORPORATION, and :    **JURY TRIAL DEMANDED**
TERRA HOLDINGS, LLC,                         :
                                                               :
                                                               :
                          Defendants.      :
------------------------------------------------------------X

        Plaintiff Diana Babayeva, by and through her undersigned counsel, Wigdor LLP, as and for her Complaint in this action against Defendants Halstead Management Company, LLC, d/b/a Halstead, Penmark Management LLC, Penmark Realty Corporation, and Terra Holdings, LLC (together, the "Company" or "Defendants") hereby alleges as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff Babayeva was a prime example of a loyal and dedicated employee of Defendants. In fact, even after nearly seven years of tireless service, Plaintiff was still recognized for working in excess of eight hours each day, five or more days a week. Defendants, however, caused her to work these extensive hours without paying her the proper overtime wages that she was owed for hours she worked over 40 hours each week.

        2.     Rather, Plaintiff was misclassified by Defendants as overtime exempt, though neither her salary nor her primary duties and responsibilities properly allowed her to be counted as such.

3.     Accordingly, Plaintiff Babayeva now brings this action seeking declaratory and injunctive relief, as well as monetary and liquidated damages, to redress Defendants' unlawful employment practices in violation of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

4.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

5.     This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and/or local law pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) - (c) because the events or omissions giving rise to this action occurred in the Southern District of New York.

## PARTIES

7.     Plaintiff Diana Babayeva is an adult resident of Queens County, New York and was employed by Defendants and given the title of "Office Manager" at the Company's 770 Lexington Avenue, New York, New York 10065 office from around September 2009 to around April 2016. At all relevant times herein, Plaintiff met the definition of an "employee" under all applicable statutes.

8.     Defendant Halstead Management Company, LLC is, upon information, a corporation registered to do business in the state of New York, with a principal place of business located at 770 Lexington Avenue, New York, New York 10065. At all relevant times herein, Defendant Halstead Management Company, LLC met the definition of an "employer" under all relevant statutes.

9. Defendant Penmark Management LLC is, upon information, a corporation registered to do business in the state of New York, with a principal place of business located at 770 Lexington Avenue, New York, New York 10065. At all relevant times herein, Defendant Penmark Management LLC met the definition of an "employer" under all relevant statutes. Plaintiff's earning statements were issued by Penmark Management LLC.

10. Defendant Penmark Realty Corporation is, upon information, a corporation registered to do business in the state of New York, listed as accepting service of process at 545 Fifth Avenue, New York, New York 10017. At all relevant times herein, Defendant Penmark Realty Corporation met the definition of an "employer" under all relevant statutes.

11. Defendant Terra Holdings, LLC is, upon information, a corporation registered to do business in the state of New York, with a principal place of business located at 770 Lexington Avenue, New York, New York 10065. At all relevant times herein, Defendant Terra Holdings, LLC met the definition of an "employer" under all relevant statutes. Upon information and belief, Terra Holdings, LLC is the parent company to Halstead Management LLC.

12. Upon information, Halstead Management LLC purchased Penmark Realty Corporation and Penmark Management LLC in 2009, and has taken over operations of Penmark Realty Corporation and Penmark Management LLC under the Halstead Management LLC name.

13. Terra Holdings, LLC ("Terra"), in turn, controls the operations of Halstead Management LLC ("Halstead").

14. Terra and Halstead share management, employees and functions. For instance, Terra and Halstead share human resources and payroll functions. In fact, Judy Kaplan heads Human Resources ("HR") and payroll functions for both Terra and Halstead.

15. Employees of both Terra and Halstead were told to go to Ms. Kaplan for any HR-related issues.  In fact, Plaintiff would turn to Ms. Kaplan for any HR-related questions or issues she had.

16. Moreover, Halstead and Terra share a legal department and general counsel.

17. Halstead and Terra are also have their principle places of business in the same building, albeit on different floors.

18. Upon information and belief, Terra owns the building located at 770 Lexington Avenue, and Halstead sublets space from Terra.

19. At all relevant times, the Company was an "employer" within the meaning of all applicable statutes and, an enterprise engaged in commerce, as defined by §203(r) and (s) of the FLSA, with annual gross volume of sales made or business done in an amount not less than $500,000.

20. At all relevant times, Defendants engaged in the same business of managing real estate properties and other real estate services, operated out of the same locate (770 Lexington Avenue), shared common ownership and management, had centralized control over employees and labor relations, and operated interrelatedly.  As such, these entities were run as a single business enterprise, and jointly employed Plaintiff.

## FACTUAL ALLEGATIONS

**I. The Company Misclassified Ms. Babayeva as Overtime Exempt, and Failed to Pay Her Proper Overtime Wages**

21. At all relevant times during her employment at the Company, Ms. Babayeva worked between 10 and 12 hours each day, for five or more days a week, resulting in 50-60 hour workweeks, even though her understanding upon joining the Company was that she would work 40 hour workweeks.

22. Despite her "Office Manager" title and her overtime-exempt classification, Ms. Babayeva was not lawfully deemed an overtime-exempt employee, but rather was entitled under federal and New York state law to be paid at a premium overtime hourly rate for all hours she worked in excess of 40 each work week.

23. Specifically, the majority of Ms. Babayeva's duties and responsibilities did not qualify her to be overtime-exempt pursuant to any of the overtime exemptions recognized with respect to the FLSA or any other applicable wage statute.

24. Rather, Plaintiff's primary duties and responsibilities consisted of clerical tasks involving little to no discretion and independent judgment such as, *inter alia*:

   i. Coordinating shredding and emptying out bins for shredding;

   ii. Ordering stationary for staff (business cards, letterhead, envelopes, etc.);

   iii. Reviewing and approving invoices for stationary supplies, time records, and office supplies, and sending these to the Accounting Department for processing;

   iv. Ordering crates for office moves, and coordinating all moves with movers, the IT Department, and the telephone consultant;

   v. Maintaining spreadsheets for the IT Department and telephone consultant with staff log-in passwords and telephone extensions for transfers;

   vi. Coordinating ID cards for new employees and retaining the cards of employees who left the Company;

   vii. Facilitating staff training for "Buildinglink" by emailing "Buildinglink" to set up training dates and times, as well as the setting up of new staff accounts to provide access to required buildings;

   viii. Taking over email accounts for departing staff members and maintaining them for 30 days or until needed by replying or forwarding incoming emails to the appropriate parties;

   ix. Setting up "lasership.com" accounts for new staff members (primarily for assistants);

5

x. Cleaning the office refrigerators as needed;

xi. Maintaining the ice machines and dishwashers;

xii. Maintaining the office copy machines;

xiii. Communicating with the Company's telephone consultant in setting up new extensions and telephone numbers for new staff, and relabeling telephone extensions for staff members who leave the Company;

xiv. Communicating with Company assistants at their required check-in time of 8:30 a.m. each workday if they were running late or would be absent;

xv. Updating the assistant buddy coverage schedule as needed and distributing it to the Company;

xvi. Ordering kitchen supplies;

xvii. Ordering copy room supplies;

xviii. Maintaining the "all in one" copy/fax/scan machines;

xix. Keeping employee files current by providing Human Resources ("HR") with examples of any new incidents or accolades;

xx. Ordering light bulbs;

xxi. Updating Company-wide documents, including payment processing forms, vacation forms, check submission forms, alteration checklists, and "three-part" forms;

xxii. Receiving and processing requests and complaints from halsteadmanagement.com inquiries, as well as from telephone callers;

xxiii. Walking around the office to make sure assistants were in their seats by 9:15 a.m.;

xxiv. Distributing messages from the overnight emergency call center;

xxv. Entering and processing assistants' check requests;

xxvi. Facilitating the window guard and fire safety plan annual mailings;

xxvii. Cataloguing and sending files to storage;

6

xxviii. Sending out Company-wide announcements on behalf of the Management Department, Accounting Department, and Closing Department;

xxix. Setting up and maintaining the bi-weekly Management Department meeting calendar;

xxx. Setting up and maintaining factor software accounts for new staff members;

xxxi. Communicating Family and Medical Leave Act related matters to HR;

xxxii. Assisting in drafting the Company's annual condominium/co-op abatement letters for distribution;

xxxiii. Updating, maintaining and distributing assistant and property manager Outlook distribution lists;

xxxiv. Assisting the Information Technology ("IT") Department in resolving IT Department/Management –related issues;

xxxv. Ordering and maintaining laptops used by assistants for annual meetings;

xxxvi. Maintaining the Company's common drive;

xxxvii. Preparing and distributing termination notices to internal staff members;

xxxviii. Updating the Company's master insurance spreadsheet and notifying in-house counsel and assistants of any changes;

xxxix. Serving as a liaison with other Company divisions to obtain and provide project information and updates;

xl. Maintaining the three telephone trunk lines for the front desk;

xli. Ordering furniture from the "Terra Marketing" vendor and setting up offices for new staff as needed;

xlii. Setting up internal accounts for new staff members;

xliii. Assisting in space planning for staff members on the seventh and eighth floors;

xliv.   Fielding calls regarding potential new business and passing onto appropriate staff members/employees;

xlv.   Maintaining a master spreadsheet of staff log-in information;

xlvi.   Drafting, distributing and maintaining inter-Company memos;

xlvii.   Preparing agendas for meetings with assistants;

xlviii.   Setting up mailboxes for new staff;

xlix.   Assisting in software update projects;

l.   Distributing staff members' paychecks and expense checks;

li.   Maintaining drives for acquired companies;

lii.   Conducting new building on-boarding, including obtaining EIN numbers, welcome books, and sponsor contacts;

liii.   Attending "kick off" meetings with the IT Department, ICC and telephone consultant for acquisitions of new companies;

liv.   Facilitating incoming and outgoing transition requests;

lv.   Corresponding with other management companies to meet deadlines for accounts;

lvi.   Serving as the "transition person" for outgoing accounts;

lvii.   Coordinating with "Terra Marketing" to take and edit pictures of new buildings under Halstead Management, LLC;

lviii.   Coordinating photography sessions for new Managers to be uploaded to the Company website; and,

lix.   Revising "Clickpay" instructions as needed and distributing the updated version to all staff members.

25.   Ms. Babayeva also routinely had to take on the work responsibilities and functions of the Assistant Property Manager position – a position that the Company understood and acknowledged was nonexempt and overtime eligible. However, despite spending a very

significant portion of her work time working as an overtime-eligible Assistant Property Manager, Plaintiff was not paid any overtime wages during the relevant period of her employment.

26.     Even though Ms. Babayeva repeatedly complained about not receiving overtime pay, her complaints fell on deaf ears.

27.     Ms. Babayeva was not exempt from the overtime requirements of the FLSA or NYLL pursuant to the so-called "Executive" or "Managerial" exemptions because: (1) her primary duties were not to manage the Company's enterprise, nor a customarily recognized department or subdivision of the enterprise; (2) she did not customarily or regularly direct the work of at least two full-time employees; and (3) she did not have any authority to hire or fire other employees.  All of these facts represent factors which must be (and were not in Ms. Babayeva's case) met in order for an employee to qualify under this exemption.

28.     Ms. Babayeva also did not qualify as an exempt "Administrative" employee, as her primary duties did not: (1) directly relate to the management or general business operation of the Company or its customers; nor did they (2) include the exercise of discretion and independent judgment with respect to matters of significance.

29.     Ms. Babayeva also did not qualify under the FLSA's "Highly-Compensated" employee exemption, as she did not in any year earn a total annual salary of more than $100,000. For example, in 2010, Ms. Babayeva's total wages were approximately $63,310; in 2011, her total wages were approximately $64,768; in 2012, her total wages were approximately $69,472; in 2013, her total wages were approximately $74,902; in 2014, her total wages were approximately $71,659; and in 2015, her total wages were $75,086.

30.     Accordingly, Ms. Babayeva is owed unpaid overtime wages from the Company going back to the beginning of the applicable statute of limitations periods.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of the FLSA: Overtime Wages)**

31. Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

32. At all relevant times, the Company has been and continues to be an "employer" engaged in commerce and/or the production of goods for commerce, within the meaning of and at revenue levels sufficient for coverage under the FLSA, 29 U.S.C. § 203.

33. At all relevant times, Plaintiff was employed by the Company as an "employee," within the meaning of the FLSA, 29 U.S.C. § 203.

34. Plaintiff consents to sue in this action pursuant to 29 U.S.C. § 216.

35. The FLSA requires covered employers, such as the Company, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all work performed in excess of 40 hours in a workweek.

36. Plaintiff was not exempt from the requirement that her employer pay her overtime compensation under the FLSA, and she is entitled to be paid overtime compensation by the Company for all overtime hours worked during the three years prior to the filing of this action (the "FLSA Period").

37. At all times during the FLSA Period, the Company has had a policy and practice of improperly classifying Plaintiff as exempt from the relevant provisions of the FLSA, and of failing to pay her overtime pay for their hours worked in excess of 40 hours in a workweek.

38. As a result of the Company's failure to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all work performed in excess of 40 hours in a workweek, the Company has violated the FLSA, 29 U.S.C. § 207(a)(1).

39. As a result of the Company's failure to maintain accurate and complete records of the hours worked by Plaintiff, the Company also has violated the FLSA.

40. The foregoing conduct of the Company, as alleged, constitutes willful violations, within the meaning of the FLSA, 29 U.S.C. § 255(a).

41. The Company's violations of the FLSA have significantly damaged Plaintiff and entitle her to recover overtime wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of the NYLL: Overtime Wages)

42. Plaintiff hereby repeats and re-alleges each and every allegation in the above paragraphs, inclusive, as if fully set forth herein.

43. Pursuant to regulations issued by the State Commissioner of Labor, 12 N.Y.C.R.R. § 142-2.2, an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate of pay in the manner and methods provided in the FLSA.

44. Pursuant to NYLL § 663, an employer who fails to pay overtime shall be liable for the amount of any underpayments, attorneys' fees and costs.

45. Plaintiff was not exempt from the requirement that her employer pay her overtime compensation under the NYLL, and she is entitled to be paid overtime compensation by Defendants for all overtime hours worked during the six years before the filing of this action (the "NYLL Period.").

46. At all times during the NYLL Period, the Company has had a policy and practice of improperly classifying Plaintiff as exempt from the overtime provisions of the NYLL, and of failing to pay her overtime pay for her hours worked in excess of 40 hours in a workweek.

47. As a result of the Company's failure to compensate Plaintiff at a rate not less than one and one half-times the regular rate of pay for all work performed in excess of 40 hours in a workweek, the Company has violated the NYLL and 12 N.Y.C.R.R. § 142-2.2.

48. As a result of the Company's failure to maintain accurate and complete records of the hours worked by Plaintiff, the Company also has violated the NYLL.

49. The foregoing conduct of the Company, as alleged, constitutes willful violations, within the meaning of the NYLL.

50. The Company's violations of the NYLL have significantly damaged Plaintiff, entitling her to recover the total amount of unpaid overtime compensation, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D. An award of damages, according to proof, including liquidated damages, to be paid by the Company for unpaid overtime wages;

E. An award of liquidated damages;

F. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and,

G. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: May 20, 2016
New York, New York

                Respectfully submitted,

                **WIGDOR LLP**

                By: _____
                  Lawrence M. Pearson
                  Tanvir H. Rahman

                85 Fifth Avenue
                New York, NY  10003
                Telephone:  (212) 257-6800
                Facsimile:  (212) 257-6845
                lpearson@wigdorlaw.com
                trahman@wigdorlaw.com

                *Attorneys for Plaintiff*