Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

**DIANA BABAYEVA**,

                                Plaintiff,

         —against—                           1:16-cv-03794-RA-KNF

**HALSTEAD MANAGEMENT COMPANY,
LLC d/b/a HALSTEAD,
PENMARK MANAGEMENT LLC,
PENMARK REALTY CORPORATION
and TERRA HOLDINGS, LLC,**

                                Defendants.

-------------------------------------------------------------x

## MEMORANDUM OF LAW

    This memorandum is submitted on behalf of defendants Penmark Realty Corporation and Terra Holdings, LLC in support of their motion for (partial) summary judgment pursuant to Fed. R. Civ. P. 56. They seek dismissal because, unlike defendants

Penmark Management LLC and Halstead Management Company, LLC, they were not "employers" of plaintiff Diana Babayeva under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and New York Labor Law. (Babayeva, a former Office Manager of Penmark Management LLC and Halstead Management Company, LLC, claims that she was misclassified as an overtime-exempt employee, and seeks compensation and other damages for unreported, unauthorized "overtime" hours she claims to have worked of her own volition over the course of six years.)

Unlike many "joint employer" cases, this is not a case in which a plaintiff "needs" to sue entities beyond a shell or insolvent "direct" employer. Babayeva's direct (and only) employers, Halstead Management Company, LLC and Penmark Management LLC, are related, active, substantial property management companies that manage thousands of luxury apartments in New York City. Gottsegen Decl. ¶¶ 11, 21. Babayeva's decision to sue "everyone in sight" arises from a conscious strategy of making this case as onerous as possible for as many people as possible. There is no other discernible reason.

Babayeva undisputedly has not worked for Penmark Realty Corporation for over seven years; not since prior to December 21, 2010. She has *never* worked for Terra Holdings, LLC, which is the parent company of Halstead Management Company, LLC and Penmark Management LLC among numerous other companies. Gottsegen Decl. ¶ 15.

Material Facts

We submit that Babayeva has no evidence by which a reasonable jury could find that either Penmark Realty Corporation or Terra Holdings, LLC were her employer(s)

during the time frame relevant to her FLSA and New York Labor Law claims, during the six years preceding the filing of this action (May 20, 2010 through May 20, 2016), a matter of which she bears the burden of proof.[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

Prior to December 21, 2010, Babayeva had been employed by Penmark Realty Corporation, as its Office Manager (an overtime-exempt position). Gottsegen Decl. ¶ 2. In late 2009, Halstead Management Company, LLC acquired the right to manage certain residential properties, *i.e.*, certain business assets (but not the stock) of Penmark Realty Corporation, and formed Penmark Management LLC, to manage those acquired management contracts, in conjunction with Halstead Management Company, LLC. Penmark Realty Corporation continued in business, engaged in other activities. Gottsegen Decl. ¶ 3.

On or about December 21, 2010, the newly-formed Penmark Management, LLC offered Babayeva the position of Office Manager and Administrative Assistant, on an at-will, salaried, basis, by offer letter dated December 21, 2010. Gottsegen Decl. ¶ 4 & Ex. A. Babayeva formally accepted the position with Penmark Management, LLC, by signing the offer letter. Gottsegen Decl. ¶ 5 & Ex. A.

Babayeva began her employment with Penmark Management, LLC effective

---

[1] *E.g.*, *Khurana v. JMP USA, Inc*., No. 14-CV-4448 (SIL), 2017 U.S. Dist. LEXIS 52063, *8 (E.D.N.Y. Apr. 5, 2017) ("To prove FLSA overtime liability Plaintiff must first establish that JMP USA was an employer under the FLSA . . . . *See* 29 U.S.C. § 207") (case citation omitted).

January 1, 2010, per the offer letter. *See* Gottsegen Decl. Ex. A. She worked at the offices of Halstead Management Company LLC at 770 Lexington Avenue, New York, New York.  Gottsegen Decl. ¶ 6.

Babayeva continued her employment with Penmark Management LLC and Halstead Management Company, LLC, as Office Manager of both, among other responsibilities, until she voluntarily resigned, effective April 8, 2016. Gottsegen Decl. ¶ 7. (She resigned because she felt that was not compensated enough for the significant responsibilities that her job entailed.)

Halstead Management Company, LLC and Penmark Management LLC, which professionally manage 282 New York luxury cooperatives and condominiums, comprising some 22,000 units. Gottsegen Decl. ¶ 11. The combined firms have 60 management employees. Gottsegen Decl. ¶ 11. In addition to being the Office Manager for the companies, Babayeva assisted in property management, and supervised a staff of assistant property managers. Gottsegen Decl. ¶ 11.

From January 1, 2010 through April 8, 2016, Babayeva was paid her salary by Penmark Management LLC, which reported such salary on form W-2 each year, and which withheld and paid income taxes on Babayeva's behalf, as she herself reported on her tax returns. Gottsegen Decl. ¶ 9.

During the period January 1, 2010 through April 8, 2016, Babayeva reported to and assisted the three senior-most officers of Penmark Management LLC and Halstead Management Company, LLC, namely, Leslie Winkler, Executive Vice President of and

later, consultant to, Penmark Management LLC, Martha Goupit, Executive Vice President and Director of Halstead Management Company, LLC and Paul S. Gottsegen, President of Halstead Management Company, LLC. Gottsegen Decl. ¶ 10.

Halstead Management Company, LLC and Penmark Management LLC have their own offices, on the 7th and 8th floors of 770 Lexington Avenue, New York, New York, separate from Terra Holdings, LLC and other subsidiaries. Gottsegen Decl. ¶ 12.

Since January 1, 2010, Penmark Realty Corporation has had no involvement with Babayeva's employment; it has not paid her, it has not managed her, it has not supervised her, it has not provided her an office, it has not provided her with any equipment. Gottsegen Decl. ¶ 14.

Terra Holdings, LLC is a holding company that owns a majority interest in several business ventures, including Halstead Management Company, LLC and Penmark Management LLC and other management, brokerage, insurance, appraisal, and software companies. Gottsegen Decl. ¶ 15. Each Terra-owned business has its own legal name, designated location, website, advertising, operations, federal tax id number, and bank accounts. Employees are not shifted between companies. Management accounts are not shifted between companies; in fact they sometimes compete with one another. Gottsegen Decl. ¶ 15. Terra Holdings, LLC provides certain services to its subsidiaries, such as accounting, benefits administration, insurance, legal and other resources for its subsidiaries. Gottsegen Decl. ¶ 15.

Babayeva was not employed by Terra Holdings, LLC. Gottsegen Decl. ¶ 16. She

was not paid by Terra Holdings, LLC, nor was she supervised by Terra Holdings, LLC. Gottsegen Decl. ¶ 16. Her supervisors (Ms. Winkler, Ms. Goupit and Mr. Gottsegen) have been employees and officers of Penmark Management LLC and/or Halstead Management Company, LLC, and not of Terra Holdings, LLC. Gottsegen Decl. ¶ 16.

Throughout her employment Babayeva described herself as being employed by and the Office Manager of Halstead Management Company LLC and Penmark Management LLC. In all of her email signatures (used thousands of times) Babayeva identified herself as "Diana Babayeva, Office Manager, Halstead Management Company LLC" or as otherwise employed by Halstead Management Company LLC, and never as employed by Terra Holdings, LLC. Gottsegen Decl. ¶ 17.

On January 23, 2012, Babayeva executed a Notice for Exempt Employees pursuant to section 195.1 of the New York Labor Law acknowledging that she was an overtime-exempt employee of Penmark Management LLC. Gottsegen Decl. ¶ 18 & Ex. B.

**Argument**

**Penmark Realty Corporation and Terra Holdings, LLC
Were Not Babayeva's "Employers" Within the Meaning
of the FLSA and the New York Labor Law**

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffers or permits" that individual to work. 29 U.S.C. § 203(g). As noted in *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003):

> An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 6 L. Ed. 2d 100, 81 S. Ct. 933 (1961) (explaining that "'economic reality' rather than 'technical concepts' is . . . the test of employment" under the statute); *see also Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("The overarching concern is whether the alleged employer possessed the power to control the workers in question.").

*Id.*, 355 F.3d at 66.

In *Zheng*,[2] the Second Circuit distilled five (non-exclusive) factors, in no particular order, to assist in meeting the "economic reality" test of whether an entity is an employer (or joint employer) for purposes of the FLSA and parallel New York Labor Law:

1. Whose premises and equipment were used for the plaintiffs' work;

2. Whether the contractor had a business that could or did shift as a unit from one putative joint employer to another;

3. The extent to which plaintiffs performed a discrete line-job that was integral to the company's process of production;

4. Whether responsibility under the contracts could pass from one subcontractor to another without material changes;

---

[2] In *Zheng*, it was determined that garment manufacturers who hired contractors to stitch and finish pieces of clothing were "joint employers" within the meaning of the FLSA and New York law. There, plaintiffs, garment workers in New York City who were directly employed by the contractors, claimed that the manufacturers were their joint employers because they worked predominantly on the manufacturers' garments, they performed a line-job that was integral to the production of the manufacturer's product, and their work was frequently and directly supervised by the manufacturers' agents. *Id.*, 355 F.3d 61 at 63-64.

5. The degree of supervision of plaintiffs' work;

6. Whether plaintiffs worked exclusively or predominantly for the company.

In addition to any set of factors adduced from one or another precedent, a court should "be free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.*, 355 F.3d at 71-72.

Virtually all of the factors, and the economic reality overall, of Babayeva's position point to Babayeva's employers as being Halstead Management Company, LLC and Penmark Management LLC, and not Penmark Realty Corporation or Terra Holdings, LLC.

Babayeva was the Office Manager only for Halstead Management Company, LLC and Penmark Management LLC, was supervised by their managers, was paid by them, worked in their own offices and was involved only with their operations and property management work. Halstead Management Company, LLC and Penmark Management LLC There was no shifting to any other company. Babayeva's work was integral to Halstead Management Company, LLC and Penmark Management LLC, and to their *raison d'etre*, *i.e.*, property management.

Therefore, the extraneous defendants, Penmark Realty Corporation and Terra Holdings, LLC., should be dismissed from this action, via summary judgment in their favor.

Conclusion

The Court should grant the motion of defendants Penmark Realty Corporation and Terra Holdings, LLC for summary judgment pursuant to Fed. R. Civ. P. 56, and enter judgment dismissing this action as to such defendants, taxing costs against plaintiff, along with such other and further relief as may be just.

Dated:  May 11, 2017

                                        Respectfully submitted,

                                        Andrew P. Saulitis

                                        LAW OFFICES OF
                                        ANDREW P. SAULITIS P.C.
                                        40 Wall Street-37th Floor
                                        New York, New York 10005
                                        (212) 459-0900
                                        Fax (212) 459-1826
                                        apslaw@msn.com

                                        *Attorneys for Defendants*