USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/15/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DIANA BABAYEVA,

                Plaintiff,

        -v-

HALSTEAD MANAGEMENT COMPANY,
LLC, d/b/a HALSTEAD, PENMARK
MANAGEMENT LLC, PENMARK REALTY
CORPORATION, and TERRA HOLDINGS,
LLC,

                Defendants.

------------------------------------------------------------X

16-CV-3794 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Diana Babayeva brings this action against Defendants Halstead Management Company, LLC, Penmark Management LLC, and Tera Holdings, LLC, for alleged violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Before the Court is the parties' application for approval of a settlement agreement. For the reasons set forth below, the Court cannot approve the settlement agreement so long as it contains the "Mutual General Release."

## BACKGROUND

From approximately September 2009 to April 2016, Babayeva worked for the defendants in various roles, holding such titles as "Office Manager" and "Assistant Property Manager." *See* Compl. ¶¶ 7, 21 (Dkt. 1); Fairness Letter (Dkt. 110). Plaintiff alleges that she worked between 50 and 60 hours each week and was classified as an overtime exempt employee, although "neither her salary nor her primary duties and responsibilities allowed her to be counted as such." *See id.*

¶ 21. Defendants contend that Babayeva was properly classified during the entirety of her employment. *See* Dkt. 110.

On May 20, 2016, Babayeva initiated this action against Defendants. *See* Dkt. 1. In her complaint, Plaintiff asserted two claims for violations of FLSA and NYLL based on her alleged misclassification as an overtime exempt employee. *See id.* ¶¶ 31-50. The parties proceeded to discovery, which, following numerous extensions, concluded on January 31, 2017. *See* Dkt. 38. On March 1, 2018, this Court granted, at conference, Defendant Penway Realty Corporation's partial motion for summary judgment and dismissed it from the case; denied Defendant Terra Holding's partial motion for summary judgment; and denied Plaintiff's cross-motion for summary judgment. *See* March 1, 2018 Court Order (Dkt. 101).

Approximately two months before trial was set to commence, the parties notified the Court by letter that they had reached a settlement in principle. *See* Dkt. 106. The Court subsequently ordered the parties to either (1) submit a joint letter setting "forth their views as to why their settlement is fair and reasonable and should be approved," (2) "[s]ubmit a stipulation or notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41," or (3) consent to conduct all further proceedings before a magistrate judge. July 16, 2018 Order at 1-2 (Dkt. 109). On August 14, 2018, the parties submitted a joint letter requesting the Court approve both a Settlement Agreement of $120,000 and a stipulation and order of dismissal of this case with prejudice. *See* Dkt. 110.

## LEGAL STANDARD

"To promote FLSA's purpose of ensuring 'a fair day's pay for a fair day's work,' a settlement in a FLSA case must be approved by a court or the Department of Labor." *Hyun v. Ippudo*

*USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *1 (S.D.N.Y. Mar. 24, 2016) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). To obtain approval, the parties must demonstrate that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citation omitted). "A fair settlement must reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15-CV-06278 (BCM), 2016 WL 3647603, at *1 (S.D.N.Y. June 29, 2016) (quoting *Mamani v. Licetti*, No. 13-CV-7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014))). "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

## DISCUSSION

Below, the Court addresses these aspects of the proposed settlement agreement: (1) the settlement amount, (2) the two release provisions, and (3) the attorneys' fees provision. The Court finds that the settlement amount, the first release provision, and the attorneys' fees provision are fair and reasonable. But the Court cannot approve the settlement agreement so long as it contains the sweeping "Mutual General Release."

### A. Settlement Amount

In general, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Martinez v. SJG Foods LLC*, No. 16-CV-7890 (RA), 2017 WL 4676828, at *1 (S.D.N.Y. Oct. 16, 2017) (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). Under the proposed settlement agreement, Defendants agree to pay Plaintiff $120,000 in exchange for release of her FLSA and NYLL claims in the instant action. *See* Settlement Agreement and Release (Dkt. 110, Ex. 1). The plaintiff estimates that, excluding liquidated damages, she is entitled to a maximum recovery of $42,213.10 based on a 50-hour work week model and $57,563.32 based on a 60-hour work week model. *See* Dkt. 110, Ex. 3, Plaintiff's Damages Calculations. If one includes liquidated damages in this calculation, the plaintiff estimates that she would be entitled to $84,426.20 and $140,710.33, respectively. *See id.* Assuming Plaintiff was entitled to liquidated damages, the proposed settlement amount therefore represents approximately 117 percent of Plaintiff's anticipated FLSA maximum recovery based on a 50-hour work week model and 85 percent of Plaintiff's anticipated FLSA maximum recovery based on a 60-hour work week model.

Under the circumstances of this case, a settlement of $120,000 is fair and reasonable. Had this case gone to trial, it is unclear if the plaintiff would have recovered either liquidated damages or backpay based on a 60-hour work week model. Even if we assume that Plaintiff was successful on both of these points, however, a settlement fee of $120,000 – or 85 percent of Plaintiff's maximum recovery of $140,710.33 – is significant "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016). As noted above, this case has already been heavily litigated, and

was to proceed to trial beginning on September 4, 2018. *See* Dkt. 110 at 3. The trial itself would have potentially involved difficult factual disputes over Defendant's use of FLSA's executive and administrative overtime exemptions. The proposed settlement amount therefore reflects a reasonable desire of the parties to "avoid anticipated burdens and expenses in litigation." *Wolinsky*, 900 F. Supp. 2d at 335. Moreover, the settlement appears to have been the "product of arm's-length bargaining between experienced counsel" with no evidence of "fraud or collusion." *Id.* at 335.

### B. Release Provision

The proposed settlement agreement involves two release provisions. In paragraph 4 of the "Settlement Agreement and Release," Plaintiff agrees to release those claims "arising out of or relating to any matter regarding the payment of her wages during or after the employment with Defendants, up to the date of execution of [the] Agreement." Dkt. 110, Ex. 1 ¶ 4.1. The parties separately agree to a "Mutual General Release" of their claims against one another in exchange for $10.00, which is "effective only upon the Court's approval of the Settlement Agreement." *See* Dkt. 110 at 1; *id.* Ex. 2.

The first of these two releases is acceptable to the Court. This provision waives only the present FLSA claims, and excludes any "claims for accrued vested benefits under any employee benefit plan of Defendants," "claims for breach of this Agreement," or "claims that may arise based on events occurring after Plaintiff signs this agreement." Dkt. 110, Ex. 1 ¶ 4.1. Such a release is sufficiently narrow so as to survive judicial scrutiny, especially given that the released claims were the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." *Zhi Li Zhong v. Rockledge Bus Tour Inc.*, No. 18-CV-454 (RA), 2018 WL 3733951, at *2 (S.D.N.Y. Aug. 6, 2018) (quoting *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)).

The Court will not, however, approve of the settlement agreement so long as it contains the "Mutual General Release." "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, No. 16-CV-1795 (PAE), 2016 WL 7177510, at *1 (S.D.N.Y. Dec. 8, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). "For this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action.'" *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123 (BCM), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)).

Here, the "Mutual General Release" is not limited to the "claims at issue in this action." Rather, this provision "release[s] and discharge[s]" all potential "claims, causes of actions, actions, debts, sums or money..." that the parties may have against each other or "may have in the future," "to the fullest extent permitted by law, with the exception of any claims arising under" the present FLSA suit. *See* Dkt. 110, Ex. 2. This does not meet the standards established for approval by courts in this District. *See Lazaro-Garcia*, 2015 WL 9162701, at *2 (finding that an agreement requiring plaintiff "to waive essentially all claims that may have arisen out of his employment with Defendants" was not fair and reasonable); *Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515 (RA), 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) (striking a mutual release agreement that required "Plaintiffs to waive virtually any claim, of any type, in existence now or in the future, against Defendants or any possibly related entity").

Nor can this release be salvaged because it is mutual. Although some courts in this District have approved sweeping release provisions on the basis of their mutuality, *see, e.g., Cionca v. Interactive Realty, LLC*, No. 15-CV-05123 (BCM), 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016), this Court has expressly declined to do so, "'absent a sound explanation for how this broad release benefits the plaintiff employee,'" *see Larrea*, 2017 WL 1857246, at *3 (quoting *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016)). The parties in this action have provided no such explanation, but simply reference the contents of the "General Mutual Release" in two footnotes within their Fairness Letter. *See* Dkt. 110 at fns. 1 & 3. The Court therefore cannot approve this settlement so long as it contains the "Mutual General Release."

### C. Attorneys' Fees

The Court approves the attorneys' fees provision in the proposed settlement agreement. The agreement allocates $41,256.12, plus $1,256.12 in litigation costs, to Plaintiff's counsel. *See* Dkt. 110, Ex. 1 ¶ 2.2. Based on the net settlement amount and the billing records submitted to the Court by Plaintiff's counsel, this amount is reasonable.

"Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorney's fees and costs incurred in successfully prosecuting wage-and-hour actions." *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016). "Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees." *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634–35 (S.D.N.Y. 2015). "In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung*, 2016 WL 7177510, at *2. "A court evaluating attorneys' fees in an FLSA settlement may use either the 'lodestar' method or the 'percentage of the fund' method, but should be guided in any event by

factors including: '(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.'" *Cionca*, 2016 WL 3440554, at *2 (quoting *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016)).

As a percentage of the net settlement amount, the award of attorneys' fees to Plaintiffs' counsel is reasonable. A contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15-CV-2950 (RA), 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018). Here, Plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with her wage-and-hour claims. *See* Dkt. 110 at 6. Deducting $1,256.12 in litigation costs that Plaintiff's counsel accrued, *see id.*, the amount of attorneys' fees here equals one-third of the $120,000 settlement agreement, *see Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530, at *1 n.1 (S.D.N.Y. Aug. 31, 2015) ("The Court's view is that attorneys' fees, when awarded on a percentage basis, are to be awarded based on the settlement net of costs.").

Yet the Court's evaluation of the fairness of the fee award does not stop there. The settlement amount must also be found reasonable "when compared to what would be awarded under the lodestar method." *Zhi Li Zhong*, 2018 WL 3733951, at *4. The lodestar amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," where the reasonable hourly rate is defined as the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) (citations omitted).

Based on billing records submitted by Plaintiff to the Court, one partner, five associates (two of them senior), one summer associate, and eight paralegals worked on this case, for a total of approximately 690 hours. *See* Dkt. 110, Ex. 4 (Wigdor LLP Billing Records). This constitutes a good deal of lawyering. As noted above, however, and as reflected in the unredacted bills submitted by Plaintiff's counsel to this Court, this case underwent full discovery (which included eight depositions), summary judgment briefing, and was being prepared for trial. *See* Dkt. 110 at 3.

The hourly billing rates provided are somewhat more suspect. According to Widgor LLP's records, the partner in this case had an hourly billing rate of $750; the five associates' hourly billing rates ranged from $350 to $500; the summer associate was billed at $180 per hour; and the eight paralegals had hourly billing rates of $180. *See* Dkt. 110, Ex. 4. In total, this amounted to $273,688 in attorney's fees. *id.* Although courts in this District have been hesitant to identify standard hourly billing rates, even senior FLSA litigators "are rarely awarded over $450 per hour." *Manley v. Midan Rest. Inc.*, No. 14-cv-1693 (HBP), 2017 WL 1155916, at *11 (S.D.N.Y. Mar. 27, 2017). Moreover, courts in this District typically approve "of an hourly rate for associates between $200 and $300." *Velandia v. Serendipity 3, Inc.*, No. 16-cv-1799 (AJN), 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018). Finally, courts in this District have generally awarded hourly rates for summer associates "in the range of $125 to $175," *Chen v. TYT East Corp.*, No 10-CIV-5288 (PAC)(DF), 2013 WL 1903735, at *3 (S.D.N.Y. May 8, 2013), and hourly rates for paralegals of $75, *see Escobar v. Fresno*, 2016 WL 7048714, at *4.

Nevertheless, the Court need not determine whether the specific rates submitted in this case are appropriate. This is because, even if counsel had charged at the low end of the range of accepted rates, the lodestar multiplier in this case would be well under 1. *See, e.g., Sakiko Fujiwara v. Sushi Yashuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding a fee that represented

a 2.28 multiplier of modified lodestar calculation and noting that "[a] multiplier near 2 compensates [Plaintiffs' counsel] appropriately").* Consequently, the amount of attorneys' fees in this case is reasonable.

## CONCLUSION

For the reasons stated above, the Court cannot approve the parties' settlement agreement with the "General Mutual Release." The parties may proceed in one of the following three ways by December 6, 2018:

1.  The parties may file a revised settlement agreement that does not include the "Mutual General Release";

2.  The parties may file a joint letter indicating their intention to abandon the settlement agreement and continue pursuing this litigation; or

3.  The parties may stipulate to a dismissal of this action without prejudice, as the Second Circuit has not expressly held that such settlement agreements require court approval. *See Cheeks*, 796 F.3d at 201 n.2.

SO ORDERED.

Dated: November 15, 2018
New York, New York

Ronnie Abrams
United States District Judge

---

* Were we to reduce the partner's rate to $300 per hour, an amount readily accepted by courts in this District for partners, *see Run Guo Zhang*, 2015 WL 5122530, at *3 (gathering cases), each associates' fee to $200, the summer associate's fees to $125 and each paralegal's fee to $75, this yields a lodestar amount of $112,992, or nearly three times the amount allocated for attorneys' fees in the settlement agreement.